NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0319n.06
Case No. 26-5016

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
Jul 21, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| JARED KENNEDY, | ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE |
| v. | ) ) ) | UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| AARON ACREE; GARY HICKS; MICAH KAMINSKI, | ) ) ) | OPINION |
| Defendants-Appellees. | ) | |

Before: KETHLEDGE, NALBANDIAN, and HERMANDORFER, Circuit Judges.

HERMANDORFER, Circuit Judge. Jared Kennedy was speeding when an officer initiated a traffic stop. Rather than pull over, Kennedy led officers on a 20-minute car chase that featured a crash and damage to his vehicle. The pursuit led to Kennedy's driveway where, upon exiting his vehicle, Kennedy ignored officers' instructions and physically resisted officers' attempts to apply handcuffs. So two officers, Gary Hicks and Aaron Acree, used force to subdue and secure Kennedy. Kennedy pled guilty to various criminal offenses stemming from the chase. He then sued Hicks and Acree, claiming that they used excessive force during his arrest in violation of his Fourth Amendment rights. We agree with the district court that Hicks and Acree are entitled to summary judgment and therefore affirm.

I

A

On the night of September 19, 2020, police officer Micah Kaminski was on radar duty when he observed a speeding vehicle. The vehicle belonged to Jared Kennedy. But because Kennedy had removed his license plate, Kaminski had no way to identify the vehicle's registrant. Kaminski engaged his lights and siren to initiate a traffic stop of the speeding vehicle.

Kennedy did not stop. Instead, he drove through a fast-food restaurant parking lot and sped away. During that maneuver, Kennedy "blew a tire." Kennedy Dep., R.70, PageID 419. His vehicle then spun off the road and onto a golf course before crashing into a tree. The impact caused the vehicle's rear bumper to fall off. Still, the pursuit continued.

Believing he "could drive [the car] safely" back to his house, Kennedy veered off the golf course and into a pharmacy parking lot. *Id.* That's when Kennedy claims to have first seen Kaminski, who positioned his vehicle in front of an exit to the parking lot. Kennedy says that Kaminski backed up and cleared the way for him to exit. In Kaminski's telling, Kennedy evaded him by "travel[ing] through the ditch in front of the pharmacy and on[to] the roadway." Kaminski Dep., R.71, PageID 545. Either way, it is undisputed that Kennedy re-entered the roadway and started driving away after seeing Kaminski. Kaminski observed that "there were sparks" coming from Kennedy's vehicle and "parts were falling off his car as he was driving down the road." *Id.* at PageID 546.

That's when Kaminski called for backup. Deputy Gary Hicks and Sheriff Aaron Acree joined the pursuit a short while later. Despite Kennedy's car having "no rear bumper" and "a flat tire," officers pursued him for another eight miles along mostly unlit, winding roads. Hicks Dep., R.72, PageID 633.

- 2 -

When it was safe to do so, Hicks attempted an "immobilization technique" called a PIT maneuver to incapacitate Kennedy's vehicle. *Id.* at PageID 653. The maneuver caused Kennedy's vehicle to temporarily stall. Rather than call it quits, Kennedy restarted his vehicle and drove off again. The pursuit finally ended when Kennedy pulled into his own driveway and put his vehicle in park.

Upon arriving at Kennedy's house, Hicks immediately ordered Kennedy out of the vehicle. Kennedy says that he attempted to follow those orders, but asserts that Hicks grabbed him by the hands, pulled him from the vehicle, and threw him to the ground before he could surrender. What happened next was captured in part on Kaminski's body-worn camera.

Hicks ordered Kennedy to get on the ground and put his hands behind his back. Kennedy did not comply. Instead, Kennedy put his arms underneath his body and pushed up off the ground to keep his abdomen slightly raised. In response to this conduct, the officers repeatedly told Kennedy to "get on the ground," "put your hands behind your back," and "stop resisting"; Kennedy replied that "nobody is resisting." BWC Footage, R.86-3, 2:04-16. During his deposition, Kennedy explained that he had "a lot of tissue damage on the front of [his] body" from a pre-existing injury, so he was "holding [his] body up to keep from being in pain." Kennedy Dep., R.70, PageID 429. But as Kennedy admitted, the officers had no reason to know about this injury during his arrest.

Kennedy claims that Hicks and Acree kicked and punched him, struck him with a baton, and ground his face into the pavement while attempting to handcuff him. The body-camera footage shows Hicks grab Kennedy's hair and punch him twice on his side while the officers were attempting to secure Kennedy's hands. Acree admitted that he struck Kennedy with his baton two or three times. The footage also shows Acree make a stomping motion, but it does not show

whether Acree made contact with Kennedy's body. When officers finally secured Kennedy's arms and pulled them behind his back, Kennedy can be heard exclaiming that his arm "won't bend that way." BWC Footage, R.86-3, at 2:36-41.

Kennedy acknowledges that the officers did not use any additional force after he was secured in handcuffs. Approximately two minutes elapsed between when Kennedy exited his vehicle and when he was placed in the police cruiser.

B

Kennedy pled guilty to wanton endangerment, criminal mischief, and failure to maintain the required car insurance in connection with the above events.

Later, Kennedy sued Kaminski, Hicks, and Acree in their individual and official capacities for their roles in his arrest. He brought claims under 42 U.S.C. § 1983 alleging that all three officers used excessive force against him in violation of his Fourth Amendment rights. He also brought state-law claims against the officers for assault, battery, and intentional infliction of emotional distress.

During discovery, Kennedy disclosed his intent to call David Sweeney, a veteran law-enforcement officer, as an expert witness. Kennedy's expert witness disclosure explained that Sweeney would testify at trial that "Acree and Hicks used excessive unconstitutional force when arresting" Kennedy. Sweeney Disclosure, R.54, PageID 226. In his written report, Sweeney concluded that Hicks and Acree both "used unreasonable force" against Kennedy during his arrest. Sweeney Expert Report, R.54-1, PageID 263.

The officers subsequently moved for summary judgment and to exclude Sweeney's testimony. The district court granted summary judgment to the officers. As relevant here, the district court first concluded that Sweeney's testimony was inadmissible because it contained

improper legal conclusions.  Next, the district court concluded that the officers were entitled to qualified immunity.  It reasoned that the officers did not violate Kennedy's right to be free from excessive force and that, even if Kennedy had demonstrated a rights violation, those rights were not clearly established.  The district court also dismissed Kennedy's state-law claims because the officers' use of force was objectively reasonable.

Kennedy appealed, and we have jurisdiction.  On appeal, Kennedy asserts that the district court erred in granting summary judgment to Hicks and Acree and in excluding portions of Sweeney's expert witness testimony.[1]  We address, and reject, each argument in turn.

II

We review the district court's decision granting summary judgment de novo.  *See Campbell v. Riahi*, 109 F.4th 854, 860 (6th Cir. 2024).  Viewing the record in the light most favorable to Kennedy, we ask whether the officers' "qualified-immunity defense contains a 'genuine dispute as to any material fact' worthy of trial."  *Moore v. Oakland County*, 126 F.4th 1163, 1167 (6th Cir. 2025) (quoting Fed. R. Civ. P. 56(a)).

"Government officials enjoy qualified immunity from suit under § 1983 unless their conduct violates clearly established law."  *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam).  So to overcome Hicks and Acree's qualified-immunity defense, Kennedy "must demonstrate (1) that the officers violated a constitutional right, and (2) that the right was clearly established."  *Aaron v. King*, 171 F.4th 822, 826 (6th Cir. 2026).  Kennedy has failed to make either showing.

A

Kennedy asserts that Hicks and Acree used excessive force by "beating him while he was under their custody and control."  Am. Compl., R.27, PageID 114.  Taking the facts in the light

---

[1] Kennedy did not appeal the grant of summary judgment to Kaminski.

most favorable to Kennedy, Hicks and Acree did not use unconstitutionally excessive force in arresting Kennedy.

Excessive-force cases center on whether the officers' use of force was "objectively reasonable in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (quotation marks omitted). That inquiry requires us to analyze the "totality of the circumstances" "as then known to the officer[s]" on the scene when force was deployed. *Barnes v. Felix*, 605 U.S. 73, 80 (2025) (citation omitted). Three factors help guide that use-of-force analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "[T]he totality of the circumstances inquiry into a use of force has no time limit." *Barnes*, 605 U.S. at 80 (quotation marks omitted). So "earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones." *Id.*

Hicks and Acree's use of force was objectively reasonable given the totality of the circumstances surrounding Kennedy's arrest. Start with the crime of arrest. What began as a routine traffic offense evolved into a 20-minute chase. During the pursuit, Kennedy crashed into a tree and damaged his vehicle before continuing to flee, leading Hicks to execute a PIT maneuver. Such efforts to "[e]vad[e] a police officer cannot be dismissed as a minor traffic violation." *Dunn v. Matatall*, 549 F.3d 348, 354 (6th Cir. 2008).

Safety concerns likewise weigh in favor of the officers. By definition, Kennedy's extended car chase exhibited his "attempt[] to evade arrest by flight." *Graham*, 490 U.S. at 396. On top of that, Kennedy had removed the license plate from his vehicle. That left the pursuing officers unable to identify the vehicle's owner, discern his criminal history, or determine whether he had

any outstanding warrants. When Kennedy arrived in his unlit driveway, the officers in pursuit did not know who the driver was, whose house they were at, whether the driver was armed, or whether the driver was trying to contact someone inside the house who might have had a weapon. All they knew was that Kennedy had shown "non-compliance" by "fleeing and evading." Hicks Dep., R.72, PageID 651. And they understood that "somebody that is trying that hard to get away from law enforcement is very dangerous and can be very violent to [officers]." *Id.* Hicks and Acree's use of force while attempting to secure Kennedy's hands "cannot be hermetically sealed off from the context" of the preceding car chase. *Barnes*, 605 U.S. at 80 (citation omitted); *see also Cunningham v. Packard*, 2023 WL 7000906, at *2 (6th Cir. Oct. 24, 2023) ("[W]hen we ask what a reasonable officer would've perceived at a given time, we can't artificially restrict the relevant timeline.").

The officers' use of force was further justified by Kennedy's continued resistance upon being removed from the vehicle. We have repeatedly explained that officers are permitted to use force when a suspect "actively resists arrest and refuses to be handcuffed." *Hagans v. Franklin County Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012); *see also Aaron*, 171 F.4th at 826-27. "Active resistance includes physically struggling with, threatening, or disobeying officers." *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (citation omitted). "And it includes refusing to move your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance." *Id.*

That active-resistance rule fits Kennedy's actions to a T. After 20 minutes of defiance in the form of a car chase, Kennedy disobeyed Hicks and Acree's commands to "get on the ground," "put your hands behind your back," and "stop resisting." BWC Footage, R.86-3, 2:04-16. He "physically struggl[ed]" with officers by burrowing his hands under his body and pressing up off

of the ground while they attempted to subdue him. *Rudlaff*, 791 F.3d at 641 (citation omitted). It was therefore reasonable for officers to use the force alleged—baton strikes, punches, and kicks—to secure Kennedy's hands. *See Williams v. Ingham*, 373 F. App'x 542, 548 (6th Cir. 2010) ("two closed-fist blows" to suspect's back were not excessive to secure suspect under similar circumstances); *Aaron*, 171 F.4th at 825-27 (three knee strikes to suspect's side were not excessive where suspect physically "prevented the officers from moving his arms behind his back for handcuffing").

Kennedy attempts to save his claim by explaining *why* he resisted—as he tells it, to avoid experiencing pain from a pre-existing injury. But Kennedy's subjective intent is irrelevant to "the perspective of a reasonable officer at the scene." *Rudlaff*, 791 F.3d at 642. And Kennedy does not dispute that officers had no pre-existing knowledge of his injury.

Kennedy instead contends that he made his subjective intent objectively apparent when he verbally communicated to Hicks and Acree that "nobody is resisting" and "my arm won't bend that way." Kennedy Br. 14, 18-19 (citation omitted). But Kennedy concedes that the officers did not have "any indication of" his injury during his arrest. Kennedy Dep., R.70, PageID 429. And "[i]t was reasonable for the Officers still to consider [Kennedy] resistant" despite his statement to the contrary because Kennedy's contemporaneous actions demonstrated continued physical resistance. *Dunn*, 549 F.3d at 355. Hicks and Acree were under no obligation to credit an actively resistant suspect's words in the face of his directly contradictory actions. *Cf. id.* at 354-55 (forcibly removing actively resistant suspect from vehicle after car chase was not excessive, even though suspect stated that he was complying with orders).

At bottom, there is no genuine dispute of fact that Kennedy led officers on a 20-minute car chase and then actively resisted arrest by physically refusing to surrender his hands for cuffing.

Acree and Hicks's use of force to secure Kennedy's hands was reasonable under the circumstances.

B

Even had Kennedy shown a violation of his rights, his claim independently fails to overcome the officers' qualified immunity. To show the kind of "clearly established" rights needed to prevail, Kennedy must demonstrate that the constitutional violation is "beyond debate." *Aaron*, 171 F.4th at 826 (citations omitted). To do so, he "must identify a case with facts similar enough that it squarely governs this one." *Id.* (citation omitted). He does not clear that hurdle.

We do not have much to add to the district court's thorough discussion and analysis of Kennedy's principal cases. *See* Summ. J. Op., R.97, PageID 3289-90 (discussing, *e.g.*, *Shreve v. Jessamine County Fiscal Ct.*, 453 F.3d 681 (6th Cir. 2006); *Baker v. City of Hamilton*, 471 F.3d 601 (6th Cir. 2006)). On appeal, Kennedy reiterates that it is clearly established "that officers may not use significant force against a suspect who poses no safety risk and is not actively resisting." Kennedy Br. 25. True enough. But as the district court noted, there is no genuine dispute that Kennedy *was* actively resisting arrest when Hicks and Acree used force to subdue him.

Nor do Kennedy's newly cited cases change things. He now offers *Rudlaff*, 791 F.3d 638, and *Jones v. City of Cincinnati*, 736 F.3d 688 (6th Cir. 2012). But in both, this Court approved officers' use of force to subdue resisting suspects. *See Rudlaff*, 791 F.3d at 642; *Jones*, 736 F.3d at 695. The same goes for *Marvin v. City of Taylor*, 509 F.3d 234 (6th Cir. 2007). There, we approved an officer's use of force to handcuff a suspect who had informed officers that he was physically unable to place his arms behind his back. *Id.* at 246-47. Those cases do not clearly demonstrate that the officers' "conduct was unlawful in the situation [they] confronted." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation omitted). If anything, had Hicks and Acree "read" these decisions "beforehand," they likely would have concluded that the cases permitted

rather than "proscribed their specific conduct." *Zorn*, 146 S. Ct. at 930 (citation omitted).

In sum, none of the precedents Kennedy cites made it "sufficiently clear that a reasonable official would understand that" the officers' use of force violated Kennedy's rights in this case. *Aaron*, 171 F.4th at 826 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). That failure independently forecloses his claim.

III

Kennedy last contests the district court's decision to exclude certain testimony from an expert in law-enforcement procedure. We review that decision for an abuse of discretion. *See Adkins v. Marathon Petroleum Co., LP*, 105 F.4th 841, 848 (6th Cir. 2024).

Generally, experts in excessive-force cases may "testify about discrete police-practice issues when those experts are properly credentialed and their testimony assists the trier of fact." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004). But experts may not render a "legal conclusion," including by opining on whether a particular use of force was objectively unreasonable under the circumstances. *DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 426 (6th Cir. 2006); *see also Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994).

The relevant testimony Kennedy proffered fell on the wrong side of that line. The expert's disclosure stated an intent to testify that "Acree and Hicks used excessive unconstitutional force when arresting" Kennedy. Sweeney Disclosure, R.54, PageID 226. Kennedy then cross-referenced the expert's report when opposing the constitutionality of force on summary judgment. But whether force is constitutional is a "pure question of law." *Brown v. Chapman*, 814 F.3d 447, 458 (6th Cir. 2016) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007)). So the district court

did not err in disregarding the expert's testimony to the extent that it encompassed legal conclusions.

*     *     *

We affirm the judgment of the district court.